A. HOLLANDER & SON, INC., respondent,

*v.*

PHILIP A. SINGER & BRO., INC., appellant.

[Decided January 31st, 1936.]

*Messrs. Leber & Ruback,* for the respondent.

*Mr. Edward R. McGlynn* and *Mr. Merritt Lane,* for. the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Stein, and reported in *119 N. J. Eq. 52.*

HEUER, J. (dissenting in part).

By reason of the particular use and the featuring of the word "seal," the inscription upon complainant's trade mark, prior to its amendment in the month of February, 1935, plainly tended to mislead and deceive the trading public. Dyed muskrat skin was thus branded as "seal fur."

Nevertheless, complainant is entitled to an injunction against defendant's simulation of its trade mark in use at the time of the filing of the bill of complaint. In proceedings instituted by the Federal Trade Commission to compel a discontinuance of the use of the descriptive noun "seal" in its original trade mark, complainant consented to an appropriate restraining order, and thereafter, at the time above-stated, and before the filing of the bill (it was filed on March 13th, 1935), substantially altered its trade mark (by compounding this objectionable term with the word "dyed,"

thus taking away its prominence and giving it an adjectival and wholly secondary sense and significance not descriptive of the character of the goods) so as to clearly and accurately describe the character of the merchandise thus branded.

Complainant may invoke equitable protection against the misuse, for the deception of the public and injury to his business, of the trade mark thus lawfully adopted and used. There is not such a sweep to the ethical maxim of "clean hands" as to bar equitable relief of this character; the principal has reasonable limitations. Concededly, the trade mark sought to be thus protected did not embody any false or misleading representation; and, that being so, equitable restraint against its imitation would not constitute a prolongation or perpetuation of the life of the misrepresentation contained in the obnoxious trade mark. See *Johnson & Johnson* v. *Seabury & Johnson, 71 N. J. Eq. 750; Coca-Cola Co.* v. *Koke Company of America, 254 U. S. 143; 41 S. Ct. 113; 65 L. Ed. 189; Moxie Nerve Food Co.* v. *Modox Co., 153; Fed. Rep. 487; Recamier Manufacturing Co.* v. *Harriet Hubbard Ayer, Inc., 59 Fed. Rep. (2d) 802; George G. Fox Co.* v. *Best Baking Co., 95 N. E. Rep. 747.*

This maxim is, of course, invocable when the prosecution of the suitor's rights will of itself involve the protection of wrongdoing; but "even a wrongdoer is not the prey of any spoliator who may outwit him." *Primeau* v. *Granfield, 180 Fed. Rep. 847.* The contrary doctrine would impose a continuing penalty, not grounded in justice, upon the user of an unlawful trade mark even after its abandonment; he would thereafter be, in the lawful conduct of his business, at the mercy of fraudulent competitors. Here, complainant's conduct, after the amendment of its label, was concededly not lacking in good faith, or characterized by unfair competitive practices or unrighteous dealing, or a disregard of equitable principles.

But it would seem to be axiomatic that complainant is not entitled to an accounting of profits from sales made by defendant of goods bearing an imitation of a trade mark which the former, because of its deceptive character, had no legal

right to employ in branding its merchandise. There is, it seems clear to me, no basis in these circumstances for this form of equitable relief; nor is there any redress at law for that matter. See *Johnson & Johnson* v. *Seabury & Johnson, supra; Coca-Cola Co.* v. *Koke Company of America, supra.*

Complainant's original trade mark was palpably deceptive. It stated an untruth—a material falsehood on its face—which gave the goods a character and reputation they did not possess or deserve. Complainant was thereby guilty of a false and misleading representation which disentitles it, at least for the period of the use of the offensive label, to the profits derived from its simulation by a competitor. *Worden* v. *California Fig Syrup Co., 187 U. S. 516;* Pom. Eq. Jur. *(4th ed.)* § *934.* The learned vice-chancellor, in disposing of this question, observed that "at no time was any testimony introduced or offered to the effect that the public had ever been deceived by the trade name 'Hollander Seal.'" Yet, in rejecting a like contention by defendant that its use of the simulated label did not result in actual deception or confusion in the public mind, he pointed out that it is not requisite to show "actual confusion * * * where the necessary and probable tendency of the defendant's conduct is to deceive the public and pass off his goods or business as and for that of the complainant"—citing *Hilton* v. *Hilton, 90 N. J. Eq. 564* (at *p. 567*).

But it is obvious that other considerations apply in the determination of complainant's right to an accounting. The "unclean hands" doctrine here comes into play. In *Leather Cloth Co.* v. *American Leather Cloth Co., 4 DeG. J. & S. 137,* Lord Westbury said: "I cannot receive it as a rule that a plaintiff is not answerable for a falsehood because it may be so gross or palpable as that no one is likely to be deceived by it. If there be a willful false statement, I shall not stop to inquire whether it be too gross to mislead." The doctrine of infringement of trade marks is grounded upon the right of the public, as well as private individuals whose business may be injured, to protection against misleading representations and frauds of this character.

Moreover, whether complainant can establish that the simulation of its lawful trade mark has resulted in damage to the good will thereby created remains to be demonstrated. Suffice it to say, that I regard it as inequitable and unjust to recompense complainant for the consequent impairment of good will produced by the false representation incorporated in the original trade mark; it has no claim on equity for the securing of the fruits of its misleading label.

Under these circumstances, there would be inequity in the application of the rule that, because of the impossibility of determining with reasonable certainty the profits directly attributable to the use of the simulated label, the owner of the trade mark is entitled to the whole of the profits derived by the infringer from the sale of the infringing goods. Without proof of injury to good will lawfully created, complainant has not made out a case for such relief in the forum of "good conscience." Compare *Johnson & Johnson* v. *Seabury & Johnson, supra.*

I shall vote to modify the decree accordingly.

Mr. Justice Donges concurs in these views.

*For affirmance*—THE CHIEF-JUSTICE, LLOYD, CASE, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 9.

*For reversal*—BODINE, J. 1.

*For modification*—DONGES, HEHER, JJ. 2.